[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 6, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-13051
Non-Argument Calendar

_____

D. C. Docket No. 07-00905-CV-WSD-1

VERONICA F. BROWN,

Plaintiff-Appellant,

versus

NORTHSIDE HOSPITAL,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(February 6, 2009)

Before HULL, MARCUS and ANDERSON, Circuit Judges.

PER CURIAM:

Plaintiff Veronica Faye Brown appeals the district court's grant of summary

judgment in favor of defendant Northside Hospital ("Northside") in her employment discrimination suit, alleging age discrimination and retaliation, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623.[1]  After review, we affirm.[2]

## I. BACKGROUND

**A.    Brown's Employment**

Brown, who is 56, worked in Northside's human resources department for thirty years.  Most recently, Brown served as a retirement specialist working with Northside's 403(b) and 457 retirement plans.  Greg Johnson managed the benefits department.  In June 2005, Renee Ruffin was hired as the Benefits Supervisor and became Brown's immediate supervisor.  Shortly thereafter, friction developed between Brown and Ruffin.  On several occasions, Ruffin told Brown to "shut up" in staff meetings, yelled at her and talked down to her in a humiliating way.

In August 2005, after one such incident, Brown complained to Johnson. Brown told Johnson that she believed Ruffin's treatment was because of Brown's

---

[1]Brown also asserted a hostile work environment claim, but the district court concluded that she abandoned it by not opposing summary judgment as to that claim.  Brown does not challenge that ruling on appeal.

[2]We review a district court's grant of summary judgment de novo, viewing the record and drawing all inferences in favor of the non-moving party. Fisher v. State Mut. Ins. Co., 290 F.3d 1256, 1259-60 (11th Cir. 2002).  Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

age. Johnson told Brown she needed to "work it out" with Ruffin. When Johnson followed up on Brown's complaints of mistreatment, Ruffin denied Brown's allegations and other witnesses did not corroborate Brown.

Ruffin and Brown continued to have difficulty. Ruffin accused Brown of trying to get out of work and excluded her from some meetings. Also in August 2005, Ruffin hired a temporary worker in her twenties and told Brown she "loved being around these babies" because they were "so pliable" and that they were "something that [she] could work with."

In the Fall of 2005, the benefits department made a transition from specialized employees to generalized, cross-trained employees so that all benefits employees would be competent to answer Northside employees' and retirees' questions. In addition, Ruffin reviewed the department's operations and began planning to convert many manual operations to automated processes. During this time, Ruffin told Brown "we'[ve] got to roll out all this old stuff and roll in the new," and warned that "things are going to change around here and you will not be a specialist."

On October 6, 2005, Johnson and Ruffin conducted Brown's annual performance evaluation and gave Brown a total score of 269 out of 300. In November 2005, Johnson called Brown into his office and asked her why Ruffin

did not like her. Brown responded that she believed it was because of Brown's knowledge relating to pensions and her age. Johnson warned Brown that she would be discharged if she did not work out her issues with Ruffin.

Brown sent Ruffin an e-mail asking her for a "guideline of what she wanted in an employee." Ruffin did not respond to the e-mail. Instead, on December 7, 2005, Ruffin, Johnson and Bridget Green, the Director of Human Resources, met with Brown to counsel her about her behavior and performance. Johnson gave Brown a letter advising her that she needed to show improvement in several areas, including: (1) stopping the practice of copying several layers of management on e-mails; (2) attending scheduled departmental meetings; (3) paying attention to detail in preparing government filings; and (4) showing respect for management by being professional and polite. Johnson discussed the contents of the letter with Brown in the meeting, and Brown disputed items two through four. The second concern listed in the letter–attending staff meetings–was the only item contributed by Ruffin. Johnson contributed the remainder.

As a result of these events, on February 19, 2006, Brown asked Johnson to transfer her to another department within Northside. Upon receiving Brown's request, Johnson decided to terminate Brown from the human resources department, but to permit Brown to transfer so she could stay employed while she

4

looked for another position. Johnson made the decision to terminate Brown in consultation with Theresa-Dawson Collier, Northside's Employee Relations Manager. Ruffin did not have the authority to terminate employees, did not recommend that Brown be terminated and was not involved in the decision to terminate Brown. According to Johnson, he terminated Brown because: (1) she was insubordinate to and did not want to be supervised by Ruffin; (2) there were complaints about Brown's job performance; and (3) she was not a team player.

As examples of Brown's insubordination, Johnson noted that Brown determined which tasks she needed to complete before her transfer without consulting Ruffin;[3] reassigned herself a different part of the alphabet in servicing benefits without Ruffin's approval;[4] gave a survey to an employee before it was to be released; and returned from medical leave with a half-day restriction without informing Ruffin.[5] As to Brown's job performance, Johnson explained that Brown transmitted inaccurate information to "Principal," an outside contractor that

[3]The record contains a February 22, 2006 letter from Brown to Johnson listing the "the areas that need special attention/clean up" before her transfer.

[4]In February 2006, Ruffin directed that all 403(b) retirement plan work would be processed by all the team members (not just Brown) and each team member would be assigned a particular alphabet grouping.

[5]Brown was out on medical leave to have surgery from January 18 to February 16, 2006 and was placed on a half-day work restriction by her doctor from February 16 to March 4, 2006.

5

handled 403(b) and 457 defined contribution plans.[6] Several meetings with Principal and Brown to try to solve the problem took place, and ultimately the responsibility of transmitting the information was given to the payroll department. In addition, Brown failed to process an employee's 457 deferral elections for several pay periods;[7] failed to turn on her "out of office" reply to her e-mail account while she was on medical leave, which meant employees and retirees got no response to their emails; and incorrectly advised a retiree that he could have a retroactive annuity payment.[8]

On February 28, 2006, Johnson and Teresa Dawson-Collier met with Brown

---

[6]Ruffin also testified as to Principal's complaint about Brown. Northside outsourced to Principal the pension and 403(b) administrative functions, but Brown continued to perform those functions. Brown duplicated efforts and, in some cases, incorrectly calculated pension benefits and then sent out letters to employees providing that incorrect information. The employees thus would receive different information from Principal and Brown as to their benefits.

[7]An e-mail chain in the record indicates that on November 3, 2005, the employee asked to change the percentages on her 403(b) and 457 plans, and Brown responded the same day that she would make the change. However, by February 10, 2006, the change still had not been made, and Johnson had to email another human resources employee to have the change made while Brown was out on leave.

[8]An e-mail chain in the record reflects that, in June 2006, a former Northside vice president, Ken Kenton, began calling about a retroactive lump sum payment of $4,000 he said Brown had calculated he would receive. Johnson asked Brown about the payment, and Brown demonstrated the calculation to him. However, when Johnson inquired with legal counsel and with Principal, he learned that the pension plan did not contain a provision for such a retroactive annuity payment. Johnson averred that Northside was bound by the "quote" made by Brown and had to "tap[ ] its reserve assets to make [Kenton] whole" due to Brown's misquote. Brown denied calculating the retroactive payment, stating that she merely provided the information to Principal to make the calculation. She did not recall whether she told Kenton he could receive a retroactive payment, but admitted that it was her understanding at the time that employees could get retroactive payments.

and gave her a letter signed by Johnson and Ruffin stating that her transfer request was accepted. The letter explained, however, that if Brown did not secure a position in another department by March 31, 2006, she would be terminated for cause. The letter listed a number of mistakes Brown recently had made, including: (1) failing to promptly process a payroll matter for an employee as promised; (2) failing to secure coverage during her absence; (3) failing to set up an "out of office" reply on her e-mail account while she was out for several weeks; (4) not allowing benefits staff to have authorization and access to reports and to set up payroll deductions in her absence, resulting in participants not receiving deductions for several pay periods;[9] (5) giving an undistributed survey to an ineligible human resources employee; (6) failing to give advance notice of working half days when she returned from medical leave; (7) listing projects she would work on without receiving directions from her supervisor; and (8) asking another employee to "give her the alphabet" the supervisor had assigned the other employee without talking to the supervisor.

---

[9]In an affidavit, Ruffin averred that she instructed Brown to give other team members the passwords so they could access the 403(b) retirement database while Brown was on leave. However, Brown failed to comply with this instruction and instead decided to process the work from home. Emails in the record indicate that, in January 2006, Principal asked Brown for authorization so other employees could access certain reports and employee messages while Brown was on medical leave, and Brown responded that she would continue to check the message center from home and fax work in. Because of Brown's decision, for two weeks the benefits department had no access to the 403(b) database and became aware there were problems when employees began calling and complaining that no one was responding to their requests.

7

In a March 2, 2006 letter, Brown disputed some of the mistakes in the February 28 letter, calling them "trumped allegations."  Brown stated that her "efforts to form an effective working relationship" with Ruffin were at an impasse because Ruffin had made it clear she preferred a "'younger team'" and had failed to share policy changes and departmental restructuring.  Brown alleged that her supervisor did not want her in the department and that Brown was being forced out of Northside.

Brown transferred to the human resources department at Northside's Forsyth County facility.  Although Brown worked with a Northside recruiter, she could not find another position within Northside by March 31, 2006, and the deadline was extended first to April 29, 2006 and then to June 30, 2006.

Meanwhile, on April 20, 2006, Brown filed a charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC").  On April 26, 2006, Brown sent a letter to Northside Vice-President Dwight Hill complaining of age discrimination.  Northside enlisted the aid of an outside investigator to investigate Brown's allegations.  On May 12, 2006, the investigator concluded that no age discrimination had occurred.  Despite two extensions, Brown was unable to get another Northside job and was terminated on June 30, 2006.  Brown's human resources position was filled by a woman in her mid-to-late thirties.

**B. District Court Proceedings**

Brown filed a <u>pro se</u> complaint alleging that, in 2004, Northside began using "hostile managers" to replace older workers with younger workers before they reached age 55 and claimed expensive retirement benefits. According to the complaint, Brown was harassed by Ruffin until she asked for a transfer, at which point she was told she was being fired instead, and was replaced by a younger worker.[10]

Brown retained counsel, and the parties conducted extensive discovery. Northside filed a motion for summary judgment, which the district court granted. As a threshold matter, the district court concluded that Brown's claims were based on circumstantial, rather than direct, evidence of age discrimination. The district court then concluded that Brown had not shown that Northside's legitimate, nondiscriminatory reasons for terminating her were pretext for age discrimination. As to the retaliation claim, the district court concluded that Brown had not established a <u>prima facie</u> case. Brown filed this appeal.

## II. DISCUSSION

---

[10]Neither Brown's EEOC charge nor her <u>pro se</u> complaint include any reference to retaliation. Nonetheless, Northside moved for, and Brown opposed, summary judgment on a retaliation claim, and the district court addressed the retaliation claim on the merits. Because the parties do not raise the issue, we assume without deciding that Brown's retaliation claim was within the scope of her EEOC charge and properly raised in the district court.

9

The ADEA prohibits an employer from discriminating against a person who is forty or older on the basis of age. See 29 U.S.C. §§ 623(a), 631(a). The ADEA also prohibits an employer from retaliating against an employee for complaining about age discrimination. See id. § 623(d).

## A.    Age Discrimination Claim

When an ADEA plaintiff alleges disparate treatment, such as termination, the plaintiff must prove that her age "actually motivated the employer's decision. That is, the plaintiff's age must have actually played a role [in the employer's decisionmaking] process and had a determinative influence on the outcome." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141, 120 S. Ct. 2097, 2105 (2000) (quotation marks omitted) (alteration in original). "A plaintiff may establish a claim of illegal age discrimination through either direct or circumstantial evidence." Van Voorhis v. Hillsborough County Bd. of County Comm'rs, 512 F.3d 1296, 1300 (11th Cir. 2008).

At the outset, we reject Brown's argument that the comments of her immediate supervisor, Ruffin, who was not involved with the decision to terminate Brown, constituted direct evidence of age discrimination. See id. (explaining that direct evidence consists of "[o]nly the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age" (quotation marks omitted));

10

Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998) ("[R]emarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination."). Instead, Brown's age discrimination claim rests on circumstantial evidence, which we analyze using the framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973). See Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc) (applying the McDonnell Douglas framework to circumstantial evidence in an ADEA case).

Under the McDonnell Douglas framework, "the plaintiff must first establish a prima facie case of discrimination." Chapman, 229 F.3d at 1024. If a plaintiff does so, a presumption of discrimination arises, and "the defendant employer must articulate a legitimate, nondiscriminatory reason for the challenged employment action." Id. If the employer proffers one or more reasons, the presumption of discrimination is eliminated, and, to survive summary judgment, the plaintiff must produce evidence, including evidence establishing the prima facie case, from which a reasonable jury could conclude that each of the employer's reasons "were not the real reasons for the adverse employment decision," but instead were pretextual. Id. at 1024-25.

The parties do not dispute that Brown established a prima facie case of age

11

discrimination and that Northside articulated three legitimate, nondiscriminatory reasons for terminating her–she was insubordinate, made mistakes in her job and was not a team player. Thus, to survive summary judgment, Brown needed to present evidence that the reasons were pretext for age discrimination.

To show pretext, a plaintiff cannot merely quarrel with the wisdom of the employer's reason, but "must meet that reason head on and rebut it." Id. at 1030. If the employer proffers more than one legitimate, nondiscriminatory reason, the plaintiff must rebut each of the reasons to survive a motion for summary judgment. Id. at 1037. Ultimately, an employer's legitimate, nondiscriminatory reason is not a pretext for discrimination unless it is shown that the reason was false and that discrimination was the real reason. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515, 113 S. Ct. 2742, 2752 (1993).

As evidence of pretext, Brown relies on: (1) Ruffin's comment that she preferred younger workers because they were pliable; (2) Brown's annual performance evaluation, which gave her high marks for job performance and professionalism; (3) Brown's affidavit stating that she attended meetings she was asked to attend; and (4) the employee handbook, which Brown says does not prohibit the practice of copying upper management on e-mails.[11]

---

[11]Brown introduced into evidence only one page of the employee handbook.

12

This evidence is insufficient to rebut head on Northside's claims that Brown was insubordinate and made mistakes in her job.[12]  As to insubordination, Johnson identified a series of incidents in which Brown failed to get Ruffin's approval before taking action, such as reassigning work from another employee to herself without Ruffin's approval, none of which is addressed by Brown's evidence. Johnson also identified a number of errors Brown made while on the job, some of which affected employees' payroll deductions and one which caused a retiree to believe he had a benefit he did not.  Brown's handling of information going to Principal caused Principal to complain to Johnson, and ultimately the task was transferred to another department.  Brown presents no evidence to rebut these incidents.

While Brown's 2005 annual evaluation was positive, it was conducted in October 2005, just a few months after Ruffin took over supervision of the department.  Further, Brown did not show that the incidents of insubordination and poor performance detailed by Johnson occurred before the evaluation was completed.  Indeed, many of the incidents occurred after October 2005. Although

_____

[12]Brown rebutted directly only the claim that she was not a team player.  Johnson testified that the "team player" reason related to Brown's failure to attend staff meetings.  Both Johnson and Ruffin testified that Brown failed to attend most staff meetings.  However, Johnson admitted that staff meetings were not mandatory, and Brown averred that she attended every meeting she was requested to attend.

13

the October 2005 evaluation was largely favorable, it identified as goals that Brown needed to "maintain focus on the customers (internal/external) perspective; visit the value of different communication styles, and enhance leadership skills." Thus, the evaluation does not indicate that Johnson's claims of insubordination and poor work performance are pretextual.

Brown did present evidence from which a jury could conclude that Ruffin liked working with "pliable" young employees. But, Ruffin did not play a role in the decision to terminate Brown. Thus, this circumstantial evidence of Ruffin's alleged age bias does not show that Johnson's reasons were pretext or that he himself was motivated by Brown's age. We note that, like Brown, Johnson was over fifty and within the class of people protected by the ADEA. See Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1471 (11th Cir. 1991) (explaining that the plaintiff's burden to show that the discharge is motivated by age is more difficult when the decisionmaker is also within the class protected by the ADEA).

Further, rather than terminate Brown outright, Johnson granted Brown's transfer request so she could find another Northside job. When Brown was unable to locate a position, Johnson twice extended Brown's temporary position to give her more time. Although Brown speculated that Johnson thwarted her efforts to find another Northside position, she offered no evidence to support her belief.

14

In sum, Brown's evidence was insufficient to support a jury finding that Johnson's non-discriminatory reasons for terminating Brown were pretext for age discrimination.

## B.     Retaliation Claim

To establish a prima facie case of retaliation, a plaintiff must show that: (1) she engaged in statutorily protected expression; (2) her employer subjected her to an action that a reasonable employee would have found to be materially adverse; and (3) there is some causal relation between the two events. Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67-69, 126 S. Ct. 2405, 2415 (2006).[13] If a plaintiff demonstrates a prima facie case of retaliation under the ADEA, her claim continues to be analyzed using the McDonnell Douglas burden shifting framework. See Crawford v. City of Fairburn, 482 F.3d 1305, 1308 (11th Cir. 2007). Thus, the burden shifts to the employer to proffer a legitimate, non-retaliatory reason for the adverse action and then to the plaintiff to show that the employer's proffered reason is merely pretext for retaliation. Id.

On appeal, Brown argues that the district court erred in concluding that she failed to establish her prima facie case. However, even assuming arguendo that

_____

[13]We have adapted the principles of law applicable to Title VII retaliation cases to retaliation claims under the ADEA. See Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993).

Brown established a <u>prima facie</u> case, Brown's retaliation claim fails because Northside offered legitimate, non-retaliatory reasons for transferring and terminating her. As with her age discrimination claim, Brown failed to present sufficient evidence to create a genuine issue of material fact as to whether the reasons were pretext and the true reason was that she complained of age discrimination. We therefore affirm the district court's entry of summary judgment on the retaliation claim.

## III. CONCLUSION

For the forgoing reasons, the district court did not err in granting summary judgment on Brown's age discrimination and retaliation claims.

**AFFIRMED.**